## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KIMBERLY TURNER,                       )
                                       )
              Plaintiff,               )
                                       )
       vs.                             )        Case No. 4:20-cv-01713-AGF
                                       )
KILOLO KIJAKAZI,[1]                    )
Acting Commissioner of Social Security, )
                                       )
              Defendant.               )

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Kimberly Turner was not disabled,

and thus not entitled to disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-434 or supplemental security income ("SSI") under Title XVI of

the Act, 42 U.S.C. §§ 1381-1383f.   For the reasons stated below, the decision will be

affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Uncontroverted Material Facts (ECF No. 28-1), as supplemented by Defendant (ECF No.

33-2).   Together, these statements provide a fair description of the record before the

---

[1]      Kilolo Kijakazi is now the Acting Commissioner of Social Security.   Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in
this suit.

Court.   Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on November 3, 1969, protectively filed her applications for benefits on January 31, 2019.[2]   In both applications, she alleged disability beginning on November 22, 2017, due to depression, anxiety and panic attacks, arthritis/osteoarthritis, social anxiety, back pain, bilateral knee pain, bilateral ankle pain, neck pain, bilateral hearing loss and right shoulder pain.   Tr. 248.   Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on March 11, 2020.   Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.   By decision dated March 31, 2020, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, status post anterior cervical microdiscectomy decompression, generalized anxiety disorder, and major depressive disorder.   Tr. 12.   However, the ALJ found that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by the Commissioner's regulations, with the following

---

[2]     Plaintiff previously filed applications for benefits on May 4, 2015, alleging disability beginning on May 3, 2015.   Following exhaustion of her administrative remedies with respect to those applications, another judge of this Court, Magistrate Judge Abbie Crites-Leoni, affirmed the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled.   *Turner v. Saul*, No. 4:18 CV 1230 ACL, 2019 WL 4260323 (E.D. Mo. Sept. 9, 2019).

limitations:

> being limited to the occasional climbing of ramps, stairs, ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; never working at unprotected heights or operate moving mechanical parts; the claimant can perform simple, routine, and repetitive tasks; have occasional interaction with co-workers and supervisors; no interaction with the general public and can have only occasional changes in the routine work setting.

Tr. 16.

The ALJ found that Plaintiff could perform certain unskilled light jobs listed in the Dictionary of Occupational Titles ("DOT") (housekeeping cleaner, hand packager, and mail room clerk), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.   Tr. 21-22.   Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on October 7, 2020.   Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly evaluate the medical opinion evidence; (2) the RFC is not supported by substantial evidence; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain.   Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits or, alternatively, further evaluation.

# DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated

4

regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.   If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.   A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders.   This technique calls for rating the claimant's degree of limitations in four areas of functioning, also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   20 C.F.R. § 404.1520a(c)(3).   To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitation in functioning.   An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.   A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.   20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.   If the claimant

5

cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

## (1) Medical Opinion Evidence and Credibility Determination

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of the state agency medical consultants, Dr. James Morgan and Dr. Nancy Ceasar, and Plaintiff's own psychiatric nurse, Janet Murdick, APRN.   Plaintiff also contends that the ALJ failed to properly evaluate and explain Plaintiff's activities of daily living.[3]   These contentions are without merit.

The regulations applicable to Plaintiff's claim provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   *See* 20 C.F.R. § 405.2520c(a) (2017) (applying to claims filed March 27, 2017, or later).   "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to

---

[3]      This argument is addressed below in Section 3.

the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).

The new regulations for claims filed after March 27, 2017, also require the ALJ to explain the persuasiveness of the medical opinions or prior administrative medical findings and explain how the supportability and consistency factors were considered. *See* 20 C.F.R §§ 404.1520c, 416.920c.   The supportability factor states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(1).   The consistency factor states, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."   20 C.F.R. § 404.1520c(c)(2).

The ALJ properly evaluated Dr. Morgan's and Dr. Ceasar's administrative medical findings and Murdick's opinion.   The ALJ discussed all of the relevant medical evidence, expressly considering the factors relevant to credibility determinations, and provided good reasons for partially discounting the more severe limitations alleged.

## A.  Dr. Morgan's Findings

Plaintiff contends that the ALJ failed to properly consider the supportability and consistency factors in her evaluation of Dr. Morgan's findings.   Dr. Morgan, a state

agency psychological consultant, issued an opinion in May of 2019, based on review of the relevant medical records.   His opinion indicated that Plaintiff had an overall moderate limitation in many of the areas relevant to the "paragraph B" criteria, and he concluded that Plaintiff "is able to perform other work with simple repetitive tasks away from the public."[4]   Tr. 125.   As noted above, the "paragraph B" criteria are part of the special technique used to determine the severity of mental disorders.   20 C.F.R. § 404.1520a(c)(3).   In his finding, Dr. Morgan detailed some of the medical evidence he reviewed to support his conclusions.   Tr. 116.   Specifically, Dr. Morgan cited Plaintiff's activities of daily living and Plaintiff's medical exams on 04/20/2017, 06/14/2017, 09/06/2017, 12/27/2017, 02/16/2018, 05/07/2018, 07/02/2018, 08/29/2018, 12/20/2018, 02/14/2019, and 04/17/2019.

Based on his review of the records, Dr. Morgan also made detailed findings with respect to the extent of Plaintiff's limitations in various relevant aspects of each paragraph B criteria.   For example, with respect to understanding and memory limitations, Dr. Morgan found Plaintiff was not significantly limited in the ability to remember locations and work-like procedures or the ability to understand and remember

---

[4]     At one place in the report, Dr. Morgan indicates that Plaintiff had no limitations in adapting or managing herself; mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace; and moderate limitations in interacting with others.   Tr. 115.   However, this appears to be an error that is not consistent with the detailed findings of the report.   Neither party suggests this was Dr. Morgan's conclusion.   In any event, the ALJ included more restrictive limitations in the RFC, consistent with the moderate functional limitations recorded in Dr. Morgan's detailed findings.

very short and simple instructions, but was moderately limited with respect to the ability

to understand and remember detailed instructions.   Tr. 118.

The ALJ's finding that Dr. Morgan's evaluation was supported by and consistent

with the record as a whole was proper.   Contrary to Plaintiff's assertion, the ALJ did not

merely draw these conclusions with no explanation.   The ALJ instead referred explicitly

to her extensive, detailed discussion of the medical evidence of record, including

Plaintiff's consistently normal mental status exams, and Plaintiff's activities, which were

consistent with Dr. Morgan's findings that Plaintiff could perform other work with

simple, repetitive tasks away from the public.   *See* Tr. 13-15, 17-19; *see Trosper v. Saul*,

No. 1:20 CV 51 DDN, 2021 WL 1857124, at *7 (E.D. Mo. May 10, 2021) ("When the

decision is read in its entirety, instead of only the single paragraph addressing [the nurse

practitioner's] opinion read in isolation, it shows the ALJ properly considered the record

evidence as a whole when evaluating the supportability and consistency of the opinion.");

*cf. Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar.

9, 2022) ("[An] ALJ's sprinkling of the words 'support' and 'consistent' in her cursory

treatment of [medical] opinions is insufficient to satisfy the Regulation's requirement that

the ALJ 'explain' how she considered these factors in determining the persuasiveness of

a medical opinion.")

Specifically, the ALJ decision discussed that the medical records supported at

most only moderate limitations in the "paragraph B" criteria.   *See* Tr. 13-15.   As to

understanding, remembering or applying information, the ALJ cited numerous medical

9

exams during 2017 through 2019, which consistently reflected that Plaintiff had fair or adequate memory, concentration, insight, and judgment.   Tr. 13-14, 445-46, 449-56, 461-65.   In finding the Plaintiff had moderate limitations in interacting with others, the ALJ cited the Plaintiff's testimony regarding going to the grocery store; the fact that she takes care of her grandson who stays with her 50% of the time, and helps him with his homework (Tr. 15, 48-50, 52); and her treatment records which evidenced normal speech throughout the period at issue.   Tr. 15.   In finding the Plaintiff had only moderate limitation with regard to concentrating, persisting or maintaining pace, the ALJ cited the medical records which showed Plaintiff's depression significantly improved with medication adjustment (Tr. 462-464) and, despite her son's death and her struggles with pain, her concentration remained fair.   Tr. 15, 445-46,449-56, 461-65.   Lastly, in finding that the Plaintiff has only a moderate limitation in adapting or managing oneself, the ALJ cited Plaintiff's testimony regarding her ability to go to the grocery store, drive her daughter to and from work, take care of her grandson, assist with housekeeping, and handle personal care tasks.   Tr. 15, 34-35, 50-53.

The ALJ explicitly referred to the above-noted determinations in order to explain how Dr. Morgan's finding that the Plaintiff suffered only moderate limitations with respect to the "paragraph B" criteria was supported by and consistent with the medical records.   In sum, with respect to Dr. Morgan's findings, the ALJ properly considered the supportability and consistency factors in accordance with the applicable regulations.   *See* 20 C.F.R. § 404.1520c(b)(2), 404.1520c(c)(1)-(2); *see Bauer v. Kijakazi*, No. 4:21-cv-

176-MTS, 2022 WL 1136140, at *4.

### B.  Dr. Ceasar's Findings

Plaintiff likewise contends that the ALJ failed to properly consider the supportability and consistency factors in her evaluation of Dr. Ceasar's findings, specifically that the ALJ failed to address the evidence of ongoing pain.   Dr. Ceasar, a state agency medical consultant, provided an opinion based on a review of the medical records in May 2019.   Dr. Ceasar concluded that Plaintiff has the ability to perform light work, including occasionally lifting or carrying 20 pounds; frequently lifting or carrying 10 pounds; standing, walking, and/or sitting for about 6 hours in an 8 hour workday; occasionally climbing ramps, stairs, ladder, ropes, and scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling.   She found no manipulative or visual impairments.   Tr. 117.   In the Additional Explanation section, Dr. Ceasar concluded that Plaintiff has a history of physical conditions that impose functional limitations but is able to perform light work and other jobs.   Tr. 118.   In this finding, Dr. Ceasar specified the exact medical evidence she used to support her conclusions.   *Id.* Specifically, Dr. Ceasar cited Plaintiff's activities of daily living, Plaintiff's physical therapy records, C-spine MRI on 03/10/2018, medical exam on 04/11/2018, surgery on 05/18/2018, follow-up on 05/20/2018, x-ray on 08/02/2018, and exams on 01/04/2019, 02/26/2019, 03/28/2019, and 04/25/2019.   *Id.*

The ALJ found Dr. Ceasar's findings persuasive, specifically noting that Plaintiff "had ongoing neck pain, but the record shows she had normal signs during her treatment

visits and her neck pain resolved after surgery," and that "[a]lthough she has generalized pain, the record did not support the fibromyalgia diagnosis due to the lack of trigger point findings."   Tr. 20.   Again, these findings summarized the ALJ's more detailed discussion of the medical records, Plaintiff's testimony, and function report included earlier in her decision.

Plaintiff argues that the ALJ's statement that "[Plaintiff] had ongoing neck pain, but the record shows that she had normal signs during treatment visits and her neck pain resolved after her neck surgery" would lead one to believe that "[plaintiff] only [complains] of neck pain and surgery complete resolved all problems…"   Pl.'s Br. 6. This argument is without merit.   The following sentence in the ALJ decision acknowledges Plaintiff's additional pain, stating that "[a]lthough [Plaintiff] had generalized pain, the record did not support the fibromyalgia diagnosis due to the lack of trigger point findings."[5]   Tr. 20.

Additionally, earlier in the decision, the ALJ detailed Plaintiff's medical records related to her neck and other generalized pain.   The record supports the finding that following her neck surgery in May 2018, Plaintiff denied neck pain and reported improvement.   Tr. 418.   The ALJ also discussed the various medical records after May 2018 in which plaintiff sought treatment for fibromyalgia and other generalized pain, including neck pain.   *See* Tr. 18-19.   But as the ALJ found, these records consistently

---

[5]   Plaintiff does not contest ALJ's findings regarding the lack of support for a fibromyalgia diagnosis.

noted normal physical exams, including normal motor function, normal range of motion in all extremities, a normal gait, no back tenderness, and normal range of motion of her back.   Further, in July 2019, Plaintiff noted that her pain was well controlled on her current medication regime, and she was able to get out more and be more active, including planting flowers, taking walks, and trying to lose weight.   *See* Tr. 18-19; 434; 442; 456-60.   In sum, the ALJ properly found that Dr. Ceasar's findings were supported by and consistent with the objective medical evidence and the record as a whole.

### C. Nurse Murdick's Opinion

Next, Plaintiff contends that the ALJ failed to properly consider the supportability and consistency factors in her evaluation of Nurse Murdick's opinion, specifically that the ALJ failed to address evidence of continued anxiety, panic attacks, nightmares, and flashbacks.   Plaintiff also contends that that the ALJ simply disagreed with Murdick and improperly drew her own inferences from the medical reports.   Such arguments are without merit.[6]

Murdick's opinion stated that Plaintiff had marked interference with concentration, persistence, and pace, as well as marked interference in adapting or managing herself and interacting with others.   Tr. 467-471.   The ALJ acknowledged

---

[6]     In connection with Plaintiff's prior applications, Murdick also submitted a medical opinion regarding Plaintiff's depression and anxiety. The ALJ in that instance also found Murdick's opinion unpersuasive, because, among other factors, her findings were not supported by the medical records.   Magistrate Judge Crites-Leoni affirmed this decision. *See Turner*, 2019 WL 4260323 at *5-6.

that Plaintiff continued to suffer from situational panic attacks and other mental health struggles related to her son's death, but the ALJ found that Murdick's more extreme findings were inconsistent with the objective medical evidence, including Murdick's own examination findings, and Plaintiff's activities of daily living.   The ALJ explained that because Plaintiff's mental signs were consistently fair throughout the period, and her depression had admittedly become "a lot better" once she adjusted her medication, Murdick's conclusion that Plaintiff suffered from marked interference was not supported by the evidence.   Tr. 20.   Indeed, Murdick's own treatment records often describe Plaintiff's depression as mild, or at the most, moderate, with difficulty around crowds but otherwise consistently fair concentration, memory, judgment and insight.   Tr. 444-66. As discussed above, the ALJ provided detailed explanations to support her conclusion regarding Plaintiff's level of interference earlier in the decision.   *See* Tr. 13-15.

It is the role of the ALJ to evaluate the medical source opinions against the case record, including medical and non-medical sources, and conclude whether such opinions are supported by and consistent with the records.   *See* 20 C.F.R §§ 404.1520c, 404.1527. The Court cannot say that the ALJ's evaluation here was outside the zone of choice.

## (2) RFC Evaluation

A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations."   20 C.F.R. § 404.1545(a).   The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her

14

limitations.   *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Plaintiff complains that the ALJ's RFC decision is not supported by substantial evidence because the RFC mirrors the RFC of the State agency medical consultants' prior administrative medical findings with some exceptions, and the State agency consultants did not examine the plaintiff, did not review the entire record,[7] and provided little explanation of what evidence supported their conclusions.

As an initial matter, despite contending that the RFC "mirrors" the state agency consultants' opinions, Plaintiff also concedes that the RFC contains more restrictive physical and mental limitations than those found by the consultants.   And the fact that the agency consultants did not examine Plaintiff does not preclude the ALJ from relying on their opinions.   Rather, the applicable regulations make clear that the ALJ may and should consider the opinions of state agency medical consultants because they "are highly qualified and experts in Social Security disability evaluation."   *See* 20 C.F.R. § 404.1513a.

As to Plaintiff's remaining arguments, a review of the ALJ's decision demonstrates that the ALJ properly formulated Plaintiff's RFC only after evaluating Plaintiff's subjective symptoms and extensively discussing the relevant evidence, including Plaintiff's testimony and the medical evidence.   Contrary to Plaintiff's claims,

---

[7]    Specifically, Plaintiff argues that subsequent to administrative medical findings of the Dr. Morgan and Dr. Ceasar, Plaintiff underwent an additional 10 months of treatment.

the ALJ's decision regarding the RFC contains an extensive chronological evaluation and discussion of Plaintiff's medical records, including the additional treatment which took place after the administrative medical findings.   *See* Tr. 19.   As discussed above, the ALJ explained that she was not persuaded by Plaintiff's provider's opinion that Plaintiff had marked interference in the areas of concentration, persistence, and pace and marked limitation in the areas of adapting or managing herself, and interacting with others, because it was not supported by her medical records and testimony. *See* Tr. 16-20. Although this Court must review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations, [it] does not require an ALJ to mechanically list and reject every possible limitation."   *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) (internal citation omitted).

After consideration of all the above-noted evidence, the ALJ concluded that Plaintiff retained the capacity to perform light work as defined in the applicable regulations, with significant modifications tailored to Plaintiff's credible limitations, including limiting Plaintiff to only occasional balancing, stooping, kneeling, crouching, and crawling; never working at unprotected heights or operating moving mechanical parts; performing only simple, routine, and repetitive tasks; having only occasional interaction with co-workers and supervisors and only occasional changes in routine work settings; and having no interaction with the general public.   The ALJ's formulation was supported by substantial evidence.

**(3) Pain Evaluation**

Lastly, Plaintiff argues that the ALJ decision failed to conduct a proper evaluation of Plaintiff's subjective complaints and lacked an express credibility determination detailing the reasons for discrediting the testimony.

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.   20 C.F.R. § 404.1529(c); SSR 16-3p.   "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.   *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).   When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; treatment other than medical; measures used to relieve pain; and any functional restrictions.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson*, 600 F.3d at 931; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The Eighth Circuit has held that an ALJ is not required to discuss each *Polaski* factor methodically.   *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir.2005); *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).   The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints.   *Lowe v. Apfel,* 226 F.3d 969, 972 (8th

17

Cir. 2000); *see also Brown,* 87 F.3d at 966.   Where an ALJ explicitly considers the

relevant factors but then discredits a claimant's complaints for good reason, the decision

should be upheld.   *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (internal citations

omitted).

Here, the ALJ adequately considered both the objective medical evidence and the

relevant *Polaski* factors throughout her analysis.

### A.  Physical Pain

The ALJ acknowledged Plaintiff's statements regarding her neck, back, elbow,

knee, hip, ankle, and right big toe pain, including the duration and intensity of the pain.

Tr. 16.   The ALJ also noted Plaintiff's testimony regarding her daily headaches and her

limitations on lifting, sitting, walking and dressing/bathing/shaving.   Tr. 16, 19.   The

ALJ evaluated these complaints against the objective medical evidence and other

testimony/reports regarding Plaintiff's daily activities.   The objective medical evidence

frequently showed mild, non-debilitating pain, and improvement, including the ability to

garden and take walks with her husband.   *See* Tr. 18, 418, 434, 458, 510.   As to her

activities, Plaintiff testified that she was able to drive to the grocery store a few miles

away, and share in housekeeping responsibilities with her husband, including mopping,

sweeping, vacuuming, washing dishes, doing laundry, mowing the lawn, and taking out

the trash.   Tr. 19-20, 35, 50-53.   Plaintiff also testified that she takes care of her 10-

year-old grandson 50% of the time, including making him sandwiches and helping him

with his homework.   Tr. 19-20, 34-36, 48-49.

18

While the Court agrees with Plaintiff that such daily activities are not dispositive, they are a proper "factor to consider in evaluating subjective complaints of pain." *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996).   Moreover, the ALJ did not rely on these daily activities alone but considered them in conjunction with the objective medical evidence and the record as a whole.

As for the other *Polaski* factors, the ALJ considered the duration, frequency and intensity of her physical pain complaints, as discussed above.   The ALJ also noted Plaintiff's complaints of aggravating factors, including sitting for extended periods.   Tr. 15.   Although the ALJ did not discuss Plaintiff's testimony regarding the effectiveness and side effects of Oxycodone and muscle relaxers, she did note Plaintiff's complaints regarding a reduction in pain medication.   *See* Tr. 18, 60.   The ALJ also discussed Plaintiff's successful treatment via anterior cervical microdiscectomy decompression at C5-C6.   Tr. 18.

After discussion of all the above information, the ALJ made an express credibility determination regarding Plaintiff's subjective complaints of physical pain, stating, "the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."   Tr. 17.

**B. Depression and Anxiety**

Similar to above, the ALJ conducted a holistic evaluation of Plaintiff's subjective complaints regarding her depression and anxiety.   The ALJ acknowledged Plaintiff's

19

statements regarding her poor memory, social anxiety, general anxiety, and panic attacks. Tr. 15-16.   But the ALJ evaluated these complaints against the objective medical evidence and other testimony/reports regarding Plaintiff's daily activities.   The objective medical evidence showed only mild to moderate depression, occasional, and largely situational panic attacks and crying episodes, and significant improvement on medication. *See* Tr. 13-15, 445-65.   As to daily activities, the ALJ noted that Plaintiff had fair concentration throughout the period, as evidenced by her ability to drive her daughter to work, shop for groceries, and care for her grandson, and help him with his homework. Tr. 15.   The ALJ also discussed Plaintiff's moderate limitations in adapting/managing herself, in light of her testimony regarding housework and personal care.

As to other factors, the ALJ considered Plaintiff's complaints of aggravating factors, including being in crowds.   Tr. 16.   The ALJ also noted Plaintiff's responsiveness to various anti-depressant and anti-anxiety medications, including her desire to switch from Cymbalta to Zoloft (Tr. 14, 456), and her improvement on Pristiq, on which the Plaintiff stated her depression was "a lot better".   Tr. 14, 462.

The ALJ recounted in detail the evidence supporting, to some extent, Plaintiff's complaints of mental limitations and accounted for these in the RFC by limiting Plaintiff to performing simple, routine and repetitive tasks with only occasional changes in work setting, having no contact with the general public, and having only occasional interaction with coworkers and supervisors.

Overall, the ALJ decision concluded that Plaintiff's reported daily activities, her

20

relatively successful treatment via neck surgery, and her reported improvement with medication, particularly after medication was adjusted—in combination with the lack of objective medical evidence—did not support such significant limitations as to be disabling.   The ALJ thus did not substantially err in her consideration of Plaintiff's subjective complaints.

In sum, upon review, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

## **<u>CONCLUSION</u>**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 29th day of September, 2022.